Ross A. Clem and Genevieve R. Clem v. Commissioner.
Clem v. Commissioner
Docket No. 79554.
United States Tax Court
T.C. Memo 1962-13; 1962 Tax Ct. Memo LEXIS 295; 21 T.C.M. (CCH) 49; T.C.M. (RIA) 62013; January 25, 1962
Sylvan Tobolowsky, Esq., Dallas Federal Savings Bldg., Dallas, Tex., for the petitioners. John D. Laflin, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the year 1953 in the amount of $3,226.40. The issues for decision are whether the cancellation of an indebtedness of one of the petitioners to the other stockholders of a corporation in which he was also a stockholder, occurred in 1953 as determined by respondent or in 1954 as contended by petitioners, and whether this cancellation of indebtedness was a gift or income to petitioners. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife residing in Henderson, Texas, filed a joint Federal *296 income tax return for the calendar year 1953 with the district director of internal revenue for the second district of Texas at Dallas. Petitioners report their income on the cash receipts and disbursements basis. Petitioner Ross A. Clem, hereinafter referred to as petitioner, is at present, and has been since the organization of the corporation, employed by Major Brick Company, Inc., hereinafter referred to as Major Brick. On or about February 2, 1953, Major Brick was incorporated under the laws of Texas. The charter provided for a capitalization of $100,000, consisting of 1,000 shares of no par value stock, and limited the stockholders to 14 with the provision that no one stockholder could own more than 10 percent of the outstanding stock. All of the stock of the corporation was subscribed to by 14 stockholders. Petitioner subscribed to 10 percent of the authorized stock in the amount of $10,000. On or about February 2, 1953, another corporation, Major Brick Sales Company, Inc., hereinafter referred to as Sales Company, was formed under the laws of Texas. Its charter provided for a capitalization of $25,000, and the 14 stockholders who subscribed to the stock of Major Brick subscribed *297 to all of the stock of Sales Company in the same proportions. Petitioner was a subscriber to $2,500 of the capital stock of Sales Company. Petitioner's subscriptions of $10,000 for capital stock of Major Brick and $2,500 for capital stock of Sales Company were paid in February 1953 from the proceeds of a loan made to him in the total amount of $12,500 by the other 13 stockholders of Major Brick and Sales Company. Stock certificates in each of these companies were issued to petitioner representing ownership of 100 shares of capital stock in each such company, the certificate of Major Brick being under date of March 20, 1953, and that of Sales Company, under date of September 5, 1953. The loan in the amount of $12,500 made to petitioner was to be repaid by him by the withholding of $100 from each of his semimonthly paychecks. The amount of $200 was withheld from petitioner's paycheck of February 28, 1953 and applied on his indebtedness; and the amount of $100 was withheld and so applied on each of the following dates: March 15, March 31, April 15, May 1, May 15, May 29, June 12, June 19, July 17, July 30, August 15, August 28, October 2, October 30, and November 27, 1953, and January 15, 1954. These *298 amounts total $1,800. Petitioner was employed by Major Brick at the time of its organization at a salary of $1,000 per month. It was agreed that his services were to consist of supervision of the building of the plant in which Major Brick's operations were to be performed, and after the completion of the plant, to be the plant manager. The plant was completed about December 1, 1953, and the company began operations at that time. In early 1954 Major Brick employed a certified public accountant who visited the company for the first time in February of 1954. After a discussion with the president of Major Brick sometime during the year 1954, the certified public accountant prepared a document for the signatures of the stockholders of Major Brick, other than petitioner, reflecting their agreement to the cancellation of petitioner's indebtedness to them of $10,000. The accountant sent the undated document prepared by him to the president of Major Brick by letter dated December 3, 1954, in order that the signatures of the stockholders might be obtained thereto. Each of the stockholders of Major Brick, other than petitioner, signed this document in December 1954, and the document, undated, *299 was given to petitioner in that month. The remaining $700 owed by petitioner to the other 13 stockholders was paid in June 1955. Respondent in his notice of deficiency determined that petitioner received additional compensation for services in the year 1953 in the amount of $10,000 on the basis that the cancellation of petitioner's $10,000 debt to Major Brick Company and/or its shareholders in 1953 was payment of compensation for services performed or to be performed by petitioner. Petitioner's indebtedness of $10,000 to the other stockholders of Major Brick was cancelled in the year 1954. Opinion The issue here involved as to the year of cancellation of petitioner's indebtedness to the remaining stockholders of Major Brick is entirely factual. The unequivocal testimony of petitioner, the president of Major Brick, and the certified public accountant who audits the books of Major Brick, is that the cancellation was in 1954, and that the undated instrument evidencing this cancellation was given to petitioner in December 1954. From the demeanor of these witnesses on the stand and their frank answers to questions on both direct and crossexamination, we are convinced that their *300 testimony is true to the best of their recollection. Because of affidavits given by petitioner and other stockholders of Major Brick in connection with a protest to the report of the revenue agent proposing a deficiency for the year 1953, in each of which reference was made to the cancellation of the indebtedness in 1953, we might question the accuracy of the recollection of the witnesses, except for other evidence in the record that makes it unmistakably clear that the error in date was in the affidavits and not in the testimony of the witnesses at the trial. The accountant who testified produced his travel records to substantiate that his first trip to Major Brick's office was in 1954 and the copy of the letter dated December 3, 1954, transmitting the document evidencing the cancellation to the president of Major Brick. The same affidavits in which the 1953 date was stated referred to the birth of petitioner's son which was on March 2, 1954, and to petitioner's being several months behind in the payments on the note which was not the situation in December 1953. It is also clear that at the time the affidavits were signed, the deficiency was being proposed on the basis of the *301 stock issued to petitioner in 1953 being additional compensation. The question of the date of cancellation of the indebtedness was not a specific matter in issue under the adjustment proposed by the revenue agent against which the protest was filed. Each witness unequivocally stated that reference to the cancellation being in 1953 in the affidavits was a mistake. It might be noted that the evidence shows that on January 16, 1961, respondent issued a notice of deficiency to petitioner for the calendar year 1954, determining a deficiency of $3,076.40 for that year on the basis that the cancellation of petitioner's $10,000 debt to Major Brick or its shareholders in 1954 constituted a payment of compensation for services performed and that the taxable income shown on petitioner's return was $9,955. It appears that this notice was issued within the 6-year period of limitations provided in section 6501(e) of the Internal Revenue Code of 1954. It is necessary that the provisions of the comparable section of the Internal Revenue Code of 1939 be applicable to the year here involved for respondent's determination to have been timely made. The year 1954 is not involved *302 in the instant case, and having held that the cancellation of indebtedness did not occur in 1953, it is unnecessary for us to consider whether the cancellation of the indebtedness in 1954 constituted taxable income to petitioner. Decision will be entered for the petitioners.